***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The date of alleged injury is September 2, 2000.
2. The claim has been denied under a Form 61 dated October 10, 2000.
3. Plaintiff alleges an injury to the right arm/shoulder on September 2, 2000.
4. On September 2, 2000, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. On such date, defendant-employer employed three or more employees.
6. At such time an employment relationship existed between plaintiff and defendant-employer.
7. At such time Key Risk Management was the carrier on the risk.
8. Plaintiff is not currently employed by defendant-employer.
9. All parties have been correctly designated, there is no question as to misjoinder of the parties and the parties are subject to the jurisdiction of the North Carolina Industrial Commission.
10. Plaintiff's average weekly wage was $426.65 at all relevant times.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 47 years old and has an eleventh grade education.
2. Plaintiff has been employed by defendant-employer, Richmond Yarns, Inc., since 1990. Plaintiff worked as a spinner and was required to operate a number of spinner frames arranged in rows. These frames were taller than plaintiff, with a spool on the upper portion of the frame which held yarn and/or roping. Plaintiff was required to reach overhead and lift overhead repetitively to perform her job.
3. On September 2, 2000 plaintiff reported for work on third shift. As plaintiff was reaching overhead to put a spool on a machine, she felt a sharp pain in her right shoulder that moved across her chest.
4. Because plaintiff thought the pain would go away, she did not immediately report the incident to her supervisor. When the pain continued, plaintiff went to the emergency room at Richmond Memorial Hospital on September 3, 2000. The history plaintiff gave at the emergency room was consistent with plaintiff's later description of the injury.
5. At the emergency room, plaintiff was given medication, her right arm was placed in a sling, and she was given a note to return to light duty work on September 4, 2000.
6. After plaintiff's visit to the emergency room, she went to the home of Earl Chavis, a supervisor at defendant-employer and reported her injury to Mr. Chavis.
7. On September 4, 2000 plaintiff attempted to return to light duty work. Because she was unable to perform her full work duties, plaintiff was not allowed to return to work. Plaintiff has not worked since September 2, 2000.
8. On September 8, 2000 plaintiff was seen by Dr. Ward S. Oakley, an orthopedist at Pinehurst Surgical Clinic, on referral from the emergency room. Plaintiff related to Dr. Oakley that on September 2, 2000 she was hanging heavy spools of yarn overhead when she heard a pop in her shoulder and that she had been having right shoulder pain since that incident.
9. On September 11, 2000 Dr. Oakley gave plaintiff a return to work note indicating that she should wear a sling and that there was to be no use of the right arm.
10. Plaintiff was subsequently given an MRI which showed a significant rotator cuff tear with retraction.
11. On September 15, 2000 Dr. Oakley recommended an open surgical approach to repair plaintiff's rotator cuff tear and retraction.
12. On February 2, 2001 Dr. Oakley noted that plaintiff's shoulder was very painful and stiff and had not improved. He further noted that plaintiff needed open repair of the rotator cuff but that the surgery had not been authorized by the workers' compensation carrier.
13. At the time of the hearing before the Deputy Commissioner, plaintiff had still not undergone repair of her right rotator cuff and had not reached maximum medical improvement.
14. Dr. Oakley in his February 2, 2001 medical note indicated that plaintiff was unable to do her regular job as a result of her shoulder problem and could not perform any job that required use of her right upper extremity.
15. In his deposition testimony Dr. Oakley was unable to give an opinion as to the cause of the rotator cuff tear. He testified that lifting a heavy spool one time generally would not cause a rotator cuff tear in a basically healthy individual. Dr. Oakley further testified that lifting spools on a regular basis could very well have significance in creating the environment for repetitive damage to the rotator cuff.
16. In addition to the rotator cuff tear, plaintiff also had a retraction which usually indicates a chronic condition and is consistent with repetitive damage to the rotator cuff occurring from repeated overhead use of the upper extremity as described by plaintiff in her description of her job duties. Dr. Oakley was unable to state with any degree of medical certainty whether plaintiff's job made her more susceptible to rotator cuff tears than others not so employed.
17. The greater weight of the evidence fails to show that plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. On September 2, 2000 plaintiff was performing her duties in her usual and customary manner and there was no interruption in the normal work routine likely to result in unexpected consequences. In addition, the medical evidence rules out any possibility that plaintiff sustained a rotator cuff tear and retraction as a result of the incident on September 2, 2000.
18. The greater weight of the medical evidence of record fails to show that plaintiff's employment placed her at a greater risk of sustaining a torn rotator cuff than the general public and other persons not so employed.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. For an injury to be compensable, it must be shown to have resulted from an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6); Perry v. Bakeries Co., 262 N.C. 272,136 S.E.2d 643 (1964). An "accident" must involve more than merely carrying on the usual and customary duties in the usual way, but rather involves the interruption of the work routine and the introduction thereby of ususual conditions likely to result in unexpected consequences. Trudell v. Heating Air Conditioning Co.,55 N.C. App. 89, 284 S.E.2d 538 (1981).
2. On September 2, 2000 plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer. Id.
3. In order for the rotator cuff tear to qualify as a compensable occupational disease, plaintiff's evidence must show that the disease meets the standard set forth in N.C. Gen. Stat. § 97-53(13). Under the statute, the condition must be due to causes and conditions characteristic of and peculiar to the particular trade or occupation or employment involved, but excluding all ordinary diseases of life to which the general public is equally exposed outside the employment. N.C. Gen Stat. § 97-53(13); Booker v. Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979).
4. On September 2, 2000 plaintiff did not contract a compensable occupational disease. The medical evidence fails to show that plaintiff was at an increased risk of developing a torn rotator cuff from the general public and other persons not so employed. N.C. Gen. Stat. §97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Under the law, plaintiff's claim must be, and the same is hereby, denied.
2. Each side shall bear its own costs.
This the ___ day of July 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN